# AFFIDAVIT

**STATE OF WEST VIRGINIA**

**COUNTY OF Kanawha, to-Wit:**

I, ATF Task Force Officer A.D. Thomas being first duly sworn, do hereby depose and state as follows:

**Affiant Experience and Training, Subject Matter Knowledge:**

1. I am currently employed by the Charleston Police Department and have been employed for approximately 8 years. I am currently assigned to the Criminal Investigations Division of the Charleston Police Department. I was assigned to the Charleston Police Department Patrol Division from October 2015 through 2018. I have been assigned to the Criminal Investigations Division from December 2018 to present. I am also a full time Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

2. As a Sworn Police Officer/ Detective I am charged with investigating all major crimes, including, but not limited to, homicides, shootings, and robberies. I perform other duties that include investigating all types of criminal behavior by interviewing suspects, witnesses, victims, etc. I gather facts to either prove guilt or innocence that I later present in the court of law. In addition, I conduct federal firearm violation investigations including but not limited to, the illegal use of firearms, firearms trafficking and prohibited persons in the possession of firearms.

3. As a result of my personal participation in the investigation of the matters referred to in this affidavit and based upon reports made to me by other law enforcement officers, I am familiar with the facts and circumstances of this investigation. Based on the information I have gathered throughout the investigation, I have determined the following:

4. Based on my training, education, experience, and discussions with other trained investigators, I know that an amount of Fentanyl weighing approximately 56.0 grams is indicative of narcotics distribution and is not a user quantity of controlled substance. I also know that it is a common practice for drug traffickers to use and keep cellular telephones in order to facilitate their drug trafficking business. Cellular telephones allow traffickers to remain in close and nearly instantaneous communication with their customers and suppliers. In my experience, it is common that the electronic memories of cellular telephones used by drug distributors and users contain evidence of drug trafficking. This evidence includes call logs, text messages, stored emails, contact lists, photographs and video images of drugs, drug proceeds, and drug trafficking paraphernalia and activity. Additionally, cellular telephones like the telephones

1

identified in the vehicle associated with Demetrius Harmon have mapping and other applications installed within their operating systems that capture location data identifying travel to and from places where drug traffickers store, sell, use or distribute controlled substances, keep property used to facilitate drug trafficking and maintain the proceeds of drug trafficking.

5. I am submitting this affidavit in support of an application for a warrant to seize evidence from a car and search data stored on the cellular telephones referenced herein and described in Attachment A. A cellular telephone is a handheld wireless device used primarily for voice communications through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually includes a "call log," which records the telephone number, date, and time of calls made to and from the telephone.

6. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the cellular telephones contain evidence of violation of Title 21 U.S.C. § 841(a)(2), Possession With Intent to Distribute Fentanyl, as well as provides evidence of ownership or constructive possession of the vehicle in this case, which furthers the investigation into the ownership of the firearms which is critical evidence of violations of Title 18, United States Code, Section 922(g)(1), 922(j), and 924(c)(1)(A).

7. Searching the cellular telephones for the evidence described above may require a range of data analysis techniques. In some cases, it is possible for agents to conduct carefully targeted searches that can discern evidence without requiring a time consuming manual search through unrelated materials that may be commingled with criminal evidence. Criminals can mislabel or hide directories and other electronic data to avoid detection or take other steps to frustrate law enforcement searches for incriminating data. These steps may require agents to conduct more extensive searches, such as scanning areas of the device's memory not allocated to listed files, or opening every file and scanning its contents briefly to determine if it falls within the scope of the warrant. In light of these difficulties, I request permission to use whatever data analysis techniques appear to be necessary to locate and retrieve the evidence described above. While the cellular telephones are capable of accessing the internet and service providers maintaining servers or similar electronic storage facilities, this warrant seeks authority solely to examine the memory of the cellular telephones. At no time will techniques be

utilized to access data stored at any location other than within the memory of the cellular telephones.

**Probable Cause**

8. On June 17, 2023, Charleston Police Department Patrol Officers were dispatched to the area of Bradford Street for an alleged domestic violence incident involving an AR-15 style rifle. An identified witness reported that an individual with black dreads was "beating" a young lady and had an AR-15 style rifle, with a tan buttstock. The caller expressed a need for urgent police response to the scene because the individual "laid the young lady out in the middle of the road, he slapped her across the hood of a car… and was chasing her down the street." Upon arrival, Officers located the suspect identified as Demetrius Harmon (hereafter "Harmon"). According to Officers, Harmon matched the physical description provided by Metro Communications. When Officers approached the suspect, Harmon was irate, nervous, and somewhat uncooperative. He was detained in handcuffs due to the nature of the investigation. Officers observed a black Cadillac SRX4, VIN 3GYFNJE66BS509613, bearing OH registration JNF4859 on scene (hereafter "Cadillac"- image below), with a busted passenger side windshield, possibly from the physical altercation. Officers spoke with a witness, who advised he observed Harmon place an AR-15 style rifle in the rear of a car.



9. Upon arrival to the scene an Officer was told by Harmon that he and his "baby mama" were fine and placing their dogs in the car. He further stated that all he was doing was putting his dogs in the car. An Officer completed a walk around of the vehicle and saw an AR-15 rifle with a tan buttstock with a drum magazine in plain view in the trunk area of the vehicle through the glass. In addition to the firearm, four Pitbull dogs were able to be seen in the vehicle.

10. Harmon stated that he was arguing with the woman. An Officer observed injuries on the alleged victim of the domestic violence incident, and areas on the Cadillac vehicle that were consistent with someone being pushed across the hood. The alleged victim was identified to be Tamara McMahan. Ms. McMahan was determined to be the significant other of Harmon. Ms. McMahan had visible injuries on her leg and redness around her face, indicating she may have been involved in a physical altercation.

11. At this point in the investigation Harmon started to deny that the Cadillac was his vehicle. An Officer requested Harmon's ID to facilitate a positive identification. Harmon stated he had an ID located in his pocket. Harmon was inconsistent as to the location of his wallet, he stated his wallet was in his back and his front pocket. He started reaching for his back pocket. Due to Harmon's behavior, the Officer placed his hand in Harmon's back pocket and located a bag of suspected Fentanyl weighing 56.0 grams, as well as an ignition key to a Cadillac.

12. The defendant was arrested for domestic violence and possession of narcotics.

13. Due to the suspected illegal narcotics and firearm found, the vehicle was towed to Copley's Wrecker Service, 1009 Central Avenue, for a search warrant. Officers applied for a search warrant for the black Cadillac SUV, VIN 3GYFNJE66BS509613, bearing OH Registration JNF4859, pertaining to evidence relating to the distribution of illegal narcotics. The search warrant was obtained through Kanawha County Magistrate Court and executed by members of the Charleston Police Department at Copley's.

14. During the execution of the search warrant Officers located and seized the following items:

    -Smith and Wesson, Model: M&P, 5.56 caliber rifle, S/N: TS77461

    -Glock, Model: 17 Gen 4, 9mm caliber pistol, S/N: BBKB25

    -Glock, Model: 23, .40 caliber pistol, S/N: FXU321

    -Glock, Model: 17 Gen 5, 9mm caliber pistol, S/N: AGKD865

    -Glock, Model: 22, .40 Caliber pistol, S/N: GL5267

-Glock, Model 19, 9mm caliber pistol, S/N: SDA285

-A backpack with a large amount of U.S. Currency and miscellaneous high-capacity magazines for the aforementioned firearms. (Image below)



15. Harmon has a criminal history consisting of various felony and misdemeanor offenses. His criminal history contains offenses for domestic violence and drug offenses.

16. Of the six firearms recovered at the scene from the Cadillac, two handguns were stolen; a Glock 17 Gen 4 (SN BBKB25) and a Glock 23 (SN FXU321), both firearms had a loaded magazine inside of them but there were no rounds inside of the chamber.

17. Additionally, Officers advised TFO Thomas there were two cellular telephones inside the vehicle that were dead or powered off (image below). It was the belief of the executing Officers at the time, due to the cellular telephones having a dead battery or being powered off, they may not be able to be physically extracted. The Officers advised TFO Thomas they returned the cellular telephones to the vehicle. Along with the cellular telephones, TFO Thomas was able to see through body worn camera and photographs taken by Officers, there were male

5

clothing items inside the vehicle, consistent with the size of Harmon. Officers also located a receipt for Lease with Harmon's name on it. None of the items described in this paragraph were seized by the officers. Once this case was being handled by a Task Force Officer of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and being reviewed by an Assistant United States Attorney, it was determined that the cellular telephones, clothing, documents, and any other unseized items that could further show possession of the vehicle, should be seized from the Cadillac. Accordingly, a federal search warrant is now being sought.



18. When the vehicle's registration and VIN number were investigated, neither number was registered to the victim or the suspect. The Cadillac is currently located at Copley's Towing Service, in Charleston, West Virginia.

19. In this case possession of the vehicle is a critical element, due to the stolen firearms, other firearms, and criminal history of the defendant. While it is clear that Harmon had dogs in the Cadillac, and a document showing his name (image below), the key fob in his pocket, as well as the AR-15 rifle identified by a witness, it is necessary to further investigate the nature of the offenses and collect all

6

reasonable available evidence. Accordingly, the clothing, documents, and cellular telephones that were not seized initially by law enforcement, along with the other items that indicate ownership, possession or constructive control of the vehicle, will show who had possession and control of the Cadillac and the contents of the vehicle. The cellular telephones will have identifying numbers, serial numbers, and user data that will allow law enforcement to determine ownership of the telephones. The telephones and all contents of the vehicle will aid in establishing actual control of the vehicle since Harmon is contesting that it is his vehicle or under his control.



### Conclusion

20.  For the reasons stated herein, there is probable cause to believe that evidence relating to violations of federal law will be found in

the vehicle to be searched. Ownership or constructive possession of the vehicle and its contents are key elements of this case that will be further developed through this search. The violations of federal law include by are not limited to: 18 U.S.C. § 922(g)(1)(Unlawful Possession of Firearms by a Felon); 18 U.S.C. § 922(j)(Unlawful Possession of Stolen Firearm); 21 U.S.C. § 841(a)(2)(Possession with Intent to Distribute, Fentanyl).

21. Due to the facts listed above your affiant is respectfully requesting an additional search warrant be issued, pursuant to Rule 41 of Federal Rule of Criminal Procedure, for the Cadillac SRX4, VIN 3GYFNJE66BS509613, bearing OH registration JNF4859 to obtain all items inside the vehicle that would assist with the confirmation of ownership and control of the vehicle including but not limited to, clothing items, cellular telephones and any and all paperwork pertaining to lease agreements and possession of the vehicle. See Attachment B for full list of items to be seized.

TFO *[signature]*

A.D. Thomas
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to by the affiant telephonically in accordance with the procedures of Rule 4.1 of the Federal Rules of Criminal Procedure this the 6th day of July, 2023.

*[signature]*
Honorable Dwane L. Tinsley
United States Magistrate Judge
Southern District of West Virginia